SOUTHERN REYNOLDS COUNTY SCHOOL DISTRICT R-2, a Corporation, Plaintiff-Respondent,

v.

Thurman C. CALLAHAN and Ida Callahan, Defendants-Appellants.

No. 46124.

Supreme Court of Missouri,

Division No. 1.

May 12, 1958.

Geo. F. Addison, Dorman L. Steelman, Salem, for defendants-appellants.

Roy W. McGhee, Jr., Piedmont, for respondent.

HOLMAN, Commissioner.

This action involves approximately one-half acre of land located in the Southwest Quarter of the Southeast Quarter of Section 2, Township 30 North, Range 2 West in Reynolds County, Missouri. In the first count of its petition plaintiff sought a judgment to the effect that it was the owner in fee simple of said land and that defendants had no title or interest therein. The second count was in ejectment. Plaintiff claimed title by reason of alleged adverse possession for more than 65 years. A trial before the court resulted in a judgment for plaintiff for the relief sought. Defendants have appealed.

It was stipulated that plaintiff is the successor school district to the Dagonia School District. The evidence indicates that the latter district had maintained and operated the Dagonia school on the land heretofore described from sometime prior to 1887 until after the district became a part of plaintiff district a few years before the trial.

The land in question was originally a part of a 40-acre tract of which Burton Randolph was the patentee from the government. The first schoolhouse was built while he owned the 40-acre tract. The land records of the county do not disclose any deed conveying the instant land to the school district. There was evidence, however, that during the Civil War a fire destroyed certain of those records. The evidence as to the record title to the school tract is incomplete and unsatisfactory. We cannot determine from the evidence whether or not defendants have record title to that tract. It does appear, however, that defendants own a 9½-acre tract which bounds the school land on the north, west, and south.

We will state the plaintiff's evidence. William Randolph testified that at trial time he was 71 years of age and had started to school at the Dagonia school when he was six years of age; that there had been a school maintained on the property from

that time until recently. W. B. Randolph stated that he was 75 years old and had started to school at Dagonia. Without objection, he also testified as follows:

"Q. How did the school acquire that property, where did they get that property, if you know? A. I have heard my grandfather say he deeded them an acre, more or less, for school and all church purposes.

"Q. Who was your grandfather? A. Burton Randolph. I have heard my father tell the same thing different times.

"Q. What was your father's name? A. His name was Jasper Randolph.

"Q. Your father was Burton's son? A. Yes, sir.

"Q. Has anyone other than the school district ever claimed to own or claimed any interest in that property? A. Never heard of nothing come up against it until right here lately, never did hear nothing against it in no way."

James Randolph (75 years of age) testified (without objection) as follows:

"Q. About how long was it used as a school? A. It was being used for school purposes since I was just a small boy.

"Q. If you know, will you tell the court how that became school property? A. Well, now I couldn't go into details. To tell all I know about it, is my grandfather owned that land there and I have heard him say many a time that where the schoolhouse set there, that that property he donated that to the district when it came to be a district, when the district was first organized.

"Q. What was your grandfather's name, Mr. Randolph? A. Burton Randolph."

It appeared from the testimony of Lucy Hill that when she started to school at Dagonia 68 years before the trial, the log schoolhouse was already "pretty old."

Later, that building was torn down and a new building constructed. Oren Sutterfield (age 54) stated that Dagonia school had operated as long as he could remember until the districts were reorganized. Also note his testimony as follows:

"Q. Generally in the community there whose property was it regarded as belonging to? A. It was regarded as the school property.

"Q. Was it always regarded as such, to the best of your recollection? A. Yes, sir. It was used for school purposes and election purposes all through the years.

"Q. You never heard the ownership of the property argued or discussed until it came time to make the sale of that building to this Logan Creek Singing Choir, did you? A. No, sir.

"Q. No one ever challenged anyone else's title to it one way or the other, did they? A. Not to my knowledge."

Mrs. Tennessee Williams stated that she attended the school 51 years before trial time and had lived in that general neighborhood all of her life. She also testified to the following:

"Q. Did you ever hear anyone claim any right, title or interest in the property other than the school district or the school board? A. I never did until about the last four years.

"Q. That is the present case you are talking about? A. Yes, sir."

In 1952 or shortly prior thereto, the plaintiff district discontinued the operation of a school at Dagonia. At that time the board was of the view that the building was needed in the community for public use and hence, in January 1953, it sold the property to the "Logan Creek Singing Choir" for $100 and made a deed to certain trustees for that organization. Defendant Thurman C. Callahan protested that sale and offered to buy the property and pay more for it than the choir had

offered. Shortly thereafter the board discovered that the sale had not beeh made in accordance with legal requirements and the property was reconveyed to the plaintiff.

The evidence indicates that in the spring of 1953 the defendants took possession of the property. The instant action was filed in November 1955. George DeWoody, superintendent of plaintiff district, visited the school building in early 1956 and stated that defendants were there and claimed that both the land and building belonged to them. At that time Mr. DeWoody stored some school material in the building and placed a lock on it. Later he found that the material had been thrown outside the building. At some time prior to the trial it appears that the school building burned.

At the close of plaintiff's evidence defendants filed a motion to dismiss the petition "for the reason that plaintiff has failed to make a prima facie case." The motion was overruled and defendants did not offer any evidence.

█ The primary contention of defendants upon this appeal is that the evidence is insufficient to support the judgment. They point out that plaintiff must prevail, if at all, upon the strength of its own title and not upon any weakness in the title of defendants. We agree that such is the general rule in this state. We have concluded, however, that the evidence was sufficient to support the finding of the trial court that plaintiff and its predecessor district acquired title to the instant land by adverse possession.

█ In reaching the foregoing conclusion we are mindful that it is our duty herein to review all of the evidence and reach our own conclusions upon the law and the evidence. However, we are admonished by statute to give due regard to the opportunity of the trial court to judge of the credibility of the witnesses and not to set aside the judgment unless it is clearly erroneous. Section 510.310(4) RSMo 1949, V.A.M.S.

█ A school district is a body corporate and can acquire title to land by adverse possession. Feeler v. Reorganized School District No. 4 of Lincoln County, Mo.Sup., 290 S.W.2d 102. In the case before us it is undisputed that the school district was in possession of the land in question and maintained a school building thereon for a period beginning long before 1887 and extending until 1953. Possession for that period of more than 66 years would certainly be adequate for acquisition of title if such is considered adverse and was not by permission. We have heretofore stated certain testimony to the effect that the land was generally regarded as belonging to the school district and that no one other than the district had claimed any title or interest in it until the defendants did so in 1953. There is no specific testimony that the original entry was or was not permissive. There is, however, testimony (which we find to be true) that Burton Randolph donated the land to the school district when it was first organized. This court has heretofore stated that "it is the law of this state that when one is put in possession of lands under a parol gift the possession of the donee is adverse from its inception." Hoelmer v. Heiskell, 359 Mo. 236, 221 S.W.2d 142, 145. See also Reader v. Williams, Mo.Sup., 216 S.W. 738; Coshow v. Otey, Mo.Sup., 222 S.W. 804; Auldridge v. Spraggin, 349 Mo. 858, 163 S.W.2d 1042; Consolidated Dist. No. 4 of Jackson County v. Glandon, 363 Mo. 1, 247 S.W.2d 770. The evidence, therefore, that Burton Randolph donated the land to the district was sufficient to authorize a finding that the possession of the district was adverse from the time of its original entry.

█ Defendants next assert that the testimony of W. B. Randolph that he had heard his grandfather say that he had "deeded" the land for school purposes, and the testimony of James Randolph that

he had heard Burton Randolph say "many a time" that he had "donated" the property to the district, was insufficient to prove plaintiff's title by community reputation, as such were the mere assertions of one individual. We have not considered that testimony as proof of title by hearsay statements relating to an ancient matter of public interest in the nature of community reputation. Actually, that rule relates to the admissibility of evidence rather than its sufficiency. As we have heretofore noted, the instant statements were not objected to. As indicated, we have considered those statements as tending to prove a parol gift of the land, which, although not immediately vesting title, would characterize the possession of the district as being adverse.

During the testimony of William Randolph the court examined the witness as disclosed by the following:

"Q. Do you know who owned that school property? A. Do you mean who owns it now? Q. No. Who did own it when you went to school there? A. I don't know, the talk was Jasper Randolph owned it when I went to school.

"Q. That Jasper Randolph owned the school property? A. The land the school was on."

The defendants now contend that that testimony "established prima facie that 'the land the school was on' was owned by Jasper Randolph as late as 1892, and hence defeats any claim of adverse possession by plaintiff." The contention is without merit. It was evidently the view of the trial court that this isolated statement was not of sufficient probative force to outweigh the testimony to the contrary which was favorable to plaintiff. We agree with the trial court in that regard.

We have heretofore stated that defendants did not offer any evidence and that it is difficult to determine from plaintiff's evidence whether or not defendants had record title to the instant tract. However, if it is assumed that they had a record interest in that land, such was extinguished by the adverse possession of plaintiff and its predecessor. On the other hand, if we assume that defendants had no title to the land in question, then it follows that they are not aggrieved by the judgment herein which adjudicated title in plaintiff and they may not complain thereof. Baugh v. Grigsby, Mo.Sup., 286 S.W.2d 798.

The foregoing will indicate our view that the judgment herein was supported by substantial evidence and that the case was properly decided. The judgment is accordingly affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.