Ann GABLE, Plaintiff-Respondent,

v.

Frank N. NILICA and Anna K. Nilica, His Wife, Defendants-Appellants.

No. 30377.

St. Louis Court of Appeals.

Missouri.

June 21, 1960.

James L. Sanders, St. Louis, for appellants.

Edward C. Schneider, Harry A. Frank, St. Louis, for respondent.

DOERNER, Commissioner.

This is an action in equity in which Ann Gable, the maker of one principal and twenty interest notes, sued to compel the crediting of a payment of $6,100 on the principal note and to adjust the face amounts of the interest notes accordingly. A judgment and decree was rendered below in favor of plaintiff, and defendants appealed.

The defendant, Frank N. Nilica, as the survivor of his mother, with whom he had jointly held the property, was the owner of a four-family flat known and numbered as 5027-29 Louisiana Avenue, St. Louis, Missouri. Upon the solicitation of Edward L. Kulczycki, a salesman for Piper Real Estate Company, defendant Frank N. Nilica in June or July, 1957, employed that Company as his agent to sell the property. After showing the four-family flat to plaintiff and her son, Ray Gable, Kulczycki obtained from plaintiff an earnest money contract dated July 9, 1957, by which plaintiff agreed to purchase the property for the sum of $24,000, by paying $7,500 in cash and giving back a note for $16,500, to mature in 10 years, and to bear interest at 5½% per annum, payable semi-annually, secured by a first deed of trust on the property.

When this earnest money contract was presented by Kulczycki to defendant Frank N. Nilica for his acceptance, the defendant objected to the price, and demurred to the amount to be paid in cash. Kulczycki ascertained that the defendant would accept $24,600, and explained that the plaintiff intended to sell certain property she owned, located at 4341 Duke Street, to her son Ray; that Ray was to obtain a loan thereon and pay the proceeds to plaintiff; and that when plaintiff had consummated the sale to Ray she would reduce the amount of the deed of trust to approximately $10,000. Thereupon Kulczycki amended the earnest money contract in longhand so as to incorporate the sales price of $24,600, the amount of the first deed of trust as

$17,100, and a provision that plaintiff " * * * will reduce the present First Deed of Trust of the sum of $17,100.00 upon the completion of the sale of the present property to approximately of $10,000.00 more or less." Both defendants then executed the sales contract and initialed the changes; and upon presentation of the revised contract to plaintiff she accepted the same and likewise initialed the handwritten modifications.

The closing of the sale occurred on July 31, 1957, at about 7:30 p. m., in the offices of the Piper Real Estate Company. Both sides agree that there were present the plaintiff, her son Ray, Ray's wife and daughter, both defendants, Kulczycki, and Daniel W. Piper, president of the company bearing his name. Piper handled the closing. The defendants executed a general warranty deed to plaintiff of the Louisiana Avenue property, and plaintiff executed a series of 21 notes payable to both defendants, secured by a first deed of trust thereon, one of which was a principal note for $17,100, due in 10 years, and 20 being interest notes each in the amount of $470.25, due successively at the end of six months periods. Plaintiff also made the agreed cash payment. The executed warranty deed, deed of trust and notes were retained by Piper for recording the deeds and the identification of the notes by the Recorder.

About August 16, 1957, Piper delivered the 21 notes and the deed of trust to the defendants, and at the same time defendants returned the first interest note, due January 31, 1958, to Piper. The defendants' explanation for leaving the first interest note with Piper was that they knew an adjustment would have to be made on it if plaintiff made a prepayment on the principal note, and that Piper was better able to compute the interest. This note was never returned to defendants, and was missing at the time of trial. At the time Piper delivered the notes and deed of trust to defendants Piper informed them he thought plaintiff would make the pre-payment on the principal note in a month or so.

Sometime in September, 1957, plaintiff conveyed the title of her Duke Street property to her son, Ray, who then borrowed $6,500 from the Chippewa Trust Company on a note and deed of trust on the property and obtained from the bank a treasurer's check for $6,426, dated September 6, 1957, payable to plaintiff. Ray had the plaintiff endorse the check to the order of the Piper Real Estate Company and on September 14, 1957, delivered it to Piper, at the latter's office, receiving therefore a receipt from Piper stating that the $6,100 was " * * * to be applied to reducing principal balance to $11,000.00 on First Deed of Trust on property being 5027–29 Louisiana Avenue recorded in Book 7756 page 116." Piper gave Ray his Company's check for $326 for the difference between the treasurer's check and the amount paid.

At the time Ray made the above payment on behalf of plaintiff he inquired of Piper whether the latter had the papers (meaning the notes and deed of trust) and whether the notes would be changed to reflect the payment made. Piper assured Ray that he had the papers but that they were locked in his safe; that he didn't want to open the safe because it was Saturday and he was alone in the office; and that he would take care of it on Monday after he contacted Mr. Nilica.

Other than a brief telephone conversation between Ray and Nilica in November, 1957, regarding the condition of a furnace in the Louisiana Avenue property, there was no contact between the parties until some time in January, 1958, when Ray read an article in the newspaper about the Piper Real Estate Company being involved in "bad deeds." Ray testified that he thereupon telephoned Nilica to ask the latter if he had heard about it, and Nilica told him he had not. Ray stated that he also inquired whether Nilica had received the $6,100, and was told by Nilica that he had not. Nilica, on the other hand, testified

that Ray telephoned and asked him if he knew that Piper was gone, and he replied "No"; and that it was he who then asked Ray "* * * if they ever made that payment, and he said, 'Yes' * * *"; and that Ray told him the payment had been made several months back. Both sides apparently agree that Piper did not pay the $6,100 to the defendants.

In his findings of fact the chancellor found that at the time the sale of the Louisiana Avenue property was closed in the office of the Piper Real Estate Company, "* * * It was then agreed that the plaintiff should make the additional payment or prepayment on the principal note to Piper, as agent for the defendants Nilica." While they are stated in a varying manner, the defendants' first six assignments of error all relate to this decisive issue: Was Piper the agent of the defendants to collect for them the $6,100 payment made by plaintiff on the principal note? Defendants cite various cases, among them Kraemer v. Leber, Mo.App., 267 S.W.2d 333, 338, in support of the rule that "* * * When the maker pays money on a note to one who does not have the note in his possession he pays at his peril and at the risk of being required to show that the payee was authorized to collect the payment as the agent of the owner * * *." That such is the rule there can be no doubt, as the cases cited in that opinion demonstrate. But the question here presented is primarily one of fact, whether plaintiff carried the burden of showing Piper was the defendants' agent to collect the payment. In the determination of that issue the evidence regarding the conversations which occurred at the time the sale was closed is of prime importance.

Ray Gable testified that after his mother had signed all of the notes Piper asked the defendants whether they wanted him to collect the notes; that Mrs. Nilica asked how much he charged, and Piper replied 50¢ a note; that Mrs. Nilica said that would be all right, and looked at her husband, who nodded his head affirmatively;

that he (Ray) then said " 'Well, what about after she sells this Duke property, where do we pay that to?' And Mrs. Nilica said, 'Since Piper is collecting the interest notes, he just as well collect that too, and he will take care of all the changing of the notes and what not.' "

In this Ray Gable was supported by Kulczycki, who testified that after Piper told Mrs. Nilica his collection charge was 50¢ a note, Mr. and Mrs. Nilica talked it over, and Mrs. Nilica told Piper "* * * 'Well, you can collect for us.' * * *"; that Mrs. Nilica was talking about both the principal and the interest notes; that Ray then specifically inquired to whom the prepayment of the principal should be made when the Duke property was sold, and Mrs. Nilica replied "* * * 'Well, you might as well pay the same to Piper and he will transfer it.' * * *."

Nilica stated that he couldn't recall any such conversation regarding the collection of the notes by Piper, and Mrs. Nilica testified that she could not remember such a discussion. The testimony of both was that at the closing Ray Gable did not then know the amount of the loan he was going to get on the Duke Street property, and that Nilica told Ray to let him know when the loan was obtained and they would get together and take care of it; and that he inquired of Ray where they should meet, Ray suggested Piper's office, and he agreed.

Thus the evidence of the parties was in irreconcilable conflict on the issue of whether the plaintiff was specifically told or led to believe by defendants that Piper was defendants' agent to collect the payment on the principal note. Defendants argue in their brief that plaintiff's evidence at best showed only that Mrs. Nilica authorized the payment to Piper, and that there was no evidence that Mr. Nilica, who had owned the Louisiana property, did so. They overlook plaintiff's evidence that Mrs. Nilica was a payee on the notes, along with her husband, and that the statements attributed to her were made in Nilica's pres-

ence, after consultation with him, without any objection being voiced by him, and that in one instance, at least, he affirmatively indicated his agreement. Generally, no particular mode or form of authority is necessary to create a valid agency. State ex rel. Kugler v. Tillatson, Mo.Sup., 312 S.W.2d 753. And the requisite manifestation of the agent's authority " * * * may be created by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement, Agency, Section 27. Plaintiff's evidence, if believed, was sufficient to show Nilica's consent, as well as Mrs. Nilica's, to Piper's appointment as agent to collect the payment from plaintiff.

Obviously, there was conflicting oral evidence; and just as obviously, the chancellor chose to believe that of the plaintiff. While we try a case of this kind de novo on the record, and are not bound by his findings, Southern Reynolds County School District R–2 v. Callahan, Mo.Sup., 313 S.W.2d 35, as that case points out we are admonished by statute to give due regard to the opportunity of the chancellor to judge of the credibility of the witnesses and not to set aside the judgment unless it is clearly erroneous. Section 510.310 RS Mo 1949, V.A.M.S. And where, as here, a disputed issue of fact has been decided on conflicting oral evidence an appellate court must give due deference to the finding of the chancellor, and his finding will be sustained unless against the weight of the evidence. Houghton v. West, Mo.Sup., 305 S.W.2d 407; City of Warsaw v. Swearngin, Mo.Sup., 295 S.W.2d 174.

Defendants' only other assignments of error relate to a statement in the chancellor's findings that prior to the sale the Louisiana Avenue property had been owned by both defendants, whereas (as we stated) the evidence showed title to have been in the name of Mr. Nilica alone; and to the alleged erroneous admission into evidence

of certain exhibits. Only one of such exhibits, the receipt from Piper to plaintiff, has been referred to herein, and its admission was proper. Such matters were inconsequential, and did not affect the chancellor's decision.

The judgment should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.